RTP:LZ
F. #2018R01916

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

ERIC GOLDSTEIN,
BLAINE ILER,
MICHAEL TURLEY and
BRIAN TWOMEY,

    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

\*\*FILED\*\*
6/16/2022

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**1:21-cr-00550(SJ)(MMH)**

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. <u>21-550 (SJ) (S-1)</u>
(T. 18, U.S.C., §§ 371, 666(a)(1)(B),
666(a)(2), 981(a)(1)(C), 1343, 1346,
1349, 1951(a), 2 and 3551 <u>et seq</u>.; T. 21,
U.S.C., § 853(p); T. 28, U.S.C.,
§ 2461(c))

THE GRAND JURY CHARGES:

INTRODUCTION TO ALL COUNTS

At all times relevant to this Superseding Indictment, unless otherwise indicated:

1. The New York City Department of Education ("NYC DOE") was an agency of the City of New York and the largest school system in the United States, with more than one million students taught in more than 1,800 public schools and an annual budget of more than $25 billion. The NYC DOE received more than $10,000 per calendar year of federal program funds involving grants and other forms of federal assistance.

2. The NYC DOE's Office of Food and Nutrition Services ("SchoolFood") was responsible for managing the overall food service operation for all New York City public schools, which included among other things, procuring and entering into contracts with food manufacturers and distributors.

### The Defendants and Relevant Entities

3. Between 2008 and September 2018, the defendant ERIC GOLDSTEIN was the NYC DOE's Chief Executive Officer of the Office of School Support Services ("OSSS Chief Executive"). As OSSS Chief Executive, GOLDSTEIN oversaw the management, budget and operations of several NYC DOE departments, including SchoolFood.

4. The defendant BLAINE ILER was a businessman and a resident of Dallas, Texas.

5. The defendant MICHAEL TURLEY was a businessman and a resident of Fayetteville, Arkansas.

6. The defendant BRIAN TWOMEY was a businessman and a resident of Dallas, Texas.

7. In or about early 2015, the defendants BLAINE ILER, MICHAEL TURLEY and BRIAN TWOMEY co-founded a food services company ("Food Service Company"), an entity whose identity is known to the Grand Jury. Food Service Company was formed to provide various food products to retail and food service markets, including to K-12 schools across the country. Food Service Company promoted and sold a number of products, including antibiotic-free chicken products marketed under the brand name Chickentopia, yogurt products marketed under the brand name Merrywood Farms, and beef products marketed under the brand name Range Meats.

8. At or about the same time Food Service Company was founded, the defendants ERIC GOLDSTEIN, BLAINE ILER, MICHAEL TURLEY and BRIAN TWOMEY as well as a fifth individual ("Partner No. 5"), whose identity is known to the Grand Jury, co-founded Range Meats Supply Company, LLC ("RMSCO"). RMSCO was formed to purchase

grass-fed beef products that Food Service Company, in turn, would then promote and sell under the brand name Range Meats to retail markets, including schools. Food Service Company, which was owned by ILER, TURLEY and TWOMEY, owned 60% of RMSCO; GOLDSTEIN owned 20% of RMSCO; and Partner No. 5 owned the remaining 20% of RMSCO.

9. Shortly after the defendants BLAINE ILER, MICHAEL TURLEY and BRIAN TWOMEY partnered with the defendant ERIC GOLDSTEIN in RMSCO, ILER, TURLEY and TWOMEY began to promote Food Service Company's products to SchoolFood officials and employees, all of whom reported, directly or indirectly, to GOLDSTEIN in his role as OSSS Chief Executive.

10. Beginning in December 2015, SchoolFood began serving Food Service Company's yogurt parfait and chicken drumstick products in all New York City public schools. In September 2016, SchoolFood began serving Food Service Company's chicken tenders product. In or about June 2016, SchoolFood selected Food Service Company's Range Meats beef burger as one of two burger brands to be served in schools.

11. Food Service Company's products were served in schools until in or about April 2017 when, following repeated allegations made by students and staff that they had found foreign objects in the products, including one incident in October 2016 when a NYC DOE employee choked on a bone in a Food Service Company chicken tender, SchoolFood stopped serving all Food Service Company products.

## The Defendants' Criminal Scheme

12. The defendants BLAINE ILER, MICHAEL TURLEY and BRIAN TWOMEY provided numerous benefits to the defendant ERIC GOLDSTEIN, including enticing GOLDSTEIN with potentially lucrative business opportunities and making monetary payments

to GOLDSTEIN and RMSCO for GOLDSTEIN's benefit. In exchange, GOLDSTEIN used his significant influence as head of SchoolFood to aid ILER, TURLEY and TWOMEY in Food Service Company's business dealings before SchoolFood. Among other things, GOLDSTEIN ensured that SchoolFood accepted Food Service Company's products for purchase, expedited the approval process, and resolved disagreements between Food Service Company and SchoolFood officials in Food Service Company's favor. The defendants purposefully concealed GOLDSTEIN's ownership interest in RMSCO from other SchoolFood officials at the same time that GOLDSTEIN was using his significant influence as the head of SchoolFood to benefit Food Service Company.

13. As one example, in July 2015, the defendant BLAINE ILER traveled to New York City to meet with SchoolFood employees about Food Service Company's chicken and yogurt products, and to meet privately with the defendant ERIC GOLDSTEIN about RMSCO. In recounting to the defendants MICHAEL TURLEY and BRIAN TWOMEY a private meeting he had with GOLDSTEIN earlier that day, ILER said that GOLDSTEIN told him, "I'm going to buy a lot of fucking chicken from you guys, let's do the beef." In the following weeks, ILER, TURLEY and TWOMEY noted that GOLDSTEIN was "pressing hard" for ILER, TURLEY and TWOMEY to focus on the RMSCO venture, and strategized their communications to GOLDSTEIN to prove to him that they were focused on the RMSCO venture.

14. The defendants BLAINE ILER, BRIAN TWOMEY and MICHAEL TURLEY transferred significant sums of money from Food Service Company to RMSCO in exchange for the defendant ERIC GOLDSTEIN resolving disputes between SchoolFood and Food Service Company in Food Service Company's favor. As one example, in early October 2015, SchoolFood officials had approved Food Service Company's chicken drumsticks and

yogurt parfait products being served in schools beginning in spring 2016. The defendants ILER, TWOMEY and TURLEY were frustrated with this timeline and told the defendant GOLDSTEIN they wanted the products to be offered in New York City schools before 2016.

15. Two weeks later, on or about October 20, 2015, the defendant BLAINE ILER transferred $20,000 from a Food Service Company bank account to a RMSCO bank account and then directed that two wire transfers be made from the RMSCO bank account: one to pay RMSCO's legal fees in the amount of $12,588.45, and the second in the amount of $7,000 to the defendant ERIC GOLDSTEIN's divorce attorney to pay GOLDSTEIN's divorce attorney fees.

16. On or about October 23, 2015, a SchoolFood executive ("SchoolFood Executive 1"), an individual whose identity is known to the Grand Jury, informed Food Service Company that SchoolFood officials had decided that Food Service Company's yogurt parfait would be served in schools beginning in spring 2016. That same day, SchoolFood Executive 1 reported to the defendant ERIC GOLDSTEIN that Food Service Company's yogurt parfait was not yet ready to be served in schools and that SchoolFood therefore planned to begin serving the parfait in spring 2016 at the earliest.

17. Three days later, however, the defendant ERIC GOLDSTEIN instructed SchoolFood Executive 1 to "fast track" products that were made in New York, which would include Food Service Company's yogurt parfaits. On or about December 1, 2015, GOLDSTEIN directed SchoolFood officials to begin serving the yogurt parfaits in schools in mid-December. The yogurt parfaits were fast-tracked and were served in schools beginning in December 2015.

18. The defendants BLAINE ILER, MICHAEL TURLEY and BRIAN TWOMEY also used the prospect of the RMSCO business venture as a means to have the defendant ERIC GOLDSTEIN resolve disputes in Food Service Company's favor. As one example, in January 2016, Food Service Company failed to supply SchoolFood the minimum number of chicken drumsticks that Food Service Company had promised to supply for school lunches that month. On January 20, 2016, SchoolFood Executive 1 notified the defendants ILER, TURLEY and TWOMEY that Food Service Company would be fined for the supply failure. On January 22, 2016, TURLEY asked GOLDSTEIN to intervene to revoke the fine and, later that day, TURLEY directed ILER and TWOMEY to send GOLDSTEIN a PowerPoint presentation related to RMSCO business, to influence GOLDSTEIN to assist Food Service Company in resolving its dispute with SchoolFood staff. On or about January 27, 2016, SchoolFood Executive 1 told TURLEY that SchoolFood had decided to waive imposition of the fine. SchoolFood officials reversed course after speaking with GOLDSTEIN, who made the decision.

19. Beginning in March 2016, the defendants BLAINE ILER, MICHAEL TURLEY and BRIAN TWOMEY began promoting Food Service Company's chicken tenders to SchoolFood. On or about May 10, 2016, the chicken tenders were submitted to SchoolFood for approval. Three days later, on or about May 13, 2016, ILER made a $10,000 wire transfer from a Food Service Company bank account to the RMSCO bank account. Once the transfer was completed, ILER directed a second wire transfer of $3,000 from the RMSCO bank account to a bank account maintained in the name of a close family member of the defendant ERIC GOLDSTEIN. The chicken tenders were "fast-tracked" for approval by SchoolFood officials and were approved by SchoolFood on or about June 20, 2016.

20. SchoolFood began serving the chicken tenders in New York City schools in September 2016. Within days, SchoolFood pulled the chicken tenders from the menu, following complaints from students and school employees that foreign objects, including plastic, metal and bone, had been found in the tenders. SchoolFood resumed serving the chicken tenders a few weeks later, but on October 28, 2016, SchoolFood again stopped serving the tenders following additional complaints from students and staff, including one instance where a staff member choked on a chicken bone in a chicken tender. Food Service Company began negotiations with SchoolFood officials to reintroduce the chicken tenders in New York City schools. Food Service Company also requested that SchoolFood serve Food Service Company's chicken drumsticks product on those days that its chicken tenders had previously been scheduled to be served in schools.

21. At the same time the defendants BLAINE ILER, MICHAEL TURLEY and BRIAN TWOMEY were negotiating with SchoolFood officials the reintroduction of Food Service Company's chicken tenders, ILER, TURLEY and TWOMEY were negotiating the transfer of Food Service Company's ownership interest in RMSCO to the defendant ERIC GOLDSTEIN along with a payment of tens of thousands of dollars to a new RMSCO bank account that GOLDSTEN had opened and that only GOLDSTEIN controlled.

22. On November 15, 2016, a Tuesday, Food Service Company requested permission from SchoolFood to substitute its chicken drumsticks for chicken tenders. SchoolFood officials were told by the defendant ERIC GOLDSTEIN to delay making the decision for a couple of days. Later that day, SchoolFood Executive 1 told Food Service Company that the decision was in GOLDSTEIN's and another SchoolFood official's hands

and that he was hoping to hear back from them on Friday regarding drumstick substitution, chicken tender launch and next steps.

23. The following day, November 16, 2016, a Wednesday, the defendant ERIC GOLDSTEIN sent an email to the defendants BRIAN TWOMEY and MICHAEL TURLEY in which GOLDSTEIN summarized the terms of the transfer of Food Service Company's interest in RMSCO to GOLDSTEIN as well as the transfer of $65,000 from Food Service Company to RMSCO's bank account. GOLDSTEIN urged TWOMEY and TURLEY to "wrap up" their deal by that Friday.

24. The defendant ERIC GOLDSTEIN continued to delay SchoolFood's giving approval to Food Service Company to resume serving its chicken tenders in schools and to substitute its chicken drumsticks for chicken tenders, while he continued to negotiate with the defendants BLAINE ILER, MICHAEL TURLEY and BRIAN TWOMEY the transfer of Food Service Company's interest in, and the $65,000 payment to, RMSCO.

25. On November 28, 2016, Food Service Company again asked SchoolFood whether Food Service Company's chicken tenders would resume being served in schools and also for permission to substitute its chicken drumsticks for chicken tenders. Shortly after SchoolFood received this request, the defendant ERIC GOLDSTEIN emailed the defendants MICHAEL TURLEY and BRIAN TWOMEY and asked, regarding the transfer of Food Service Company's transfer of its interest in RMSCO as well as the $65,000 payment, "are we on target?"

26. The next day, November 29, 2016, the defendants BLAINE ILER, MICHAEL TURLEY and BRIAN TWOMEY agreed to transfer all of Food Service Company's interest in RMSCO to the defendant ERIC GOLDSTEN, and also to wire approximately $66,670

to the new RMSCO bank account that GOLDSTEIN had opened and controlled. In exchange, the following day, November 30, 2016, GOLDSTEIN authorized SchoolFood to resume serving Food Service Company's chicken tenders in schools beginning in January 2017 and approved Food Service Company's request to substitute its chicken drumsticks for chicken tenders. On or about December 8, 2016, approximately $66,670 was wired from a Food Service Company bank account to the new RMSCO bank account that GOLDSTEIN controlled. On or about December 9, 2016, GOLDSTEIN transferred $10,000 into another checking account, using the money to pay almost $10,000 to his divorce attorney and toward his credit card debt.

## COUNT ONE
(Conspiracy to Commit Hobbs Act Extortion)

27.  The allegations set forth in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

28.  In or about and between March 2015 and December 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERIC GOLDSTEIN, BLAINE ILER, MICHAEL TURLEY and BRIAN TWOMEY, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that GOLDSTEIN agreed to obtain property, to wit: United States currency and other forms of payment, from ILER, TURLEY, TWOMEY and others with their consent, which consent was induced under color of official right, to wit: GOLDSTEIN's position as a senior executive of the NYC DOE.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

## COUNT TWO
### (Hobbs Act Extortion)

29.     The allegations set forth in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

30.     On or about December 8, 2016, within the Eastern District of New York and elsewhere, the defendant ERIC GOLDSTEIN, together with others, did knowingly and intentionally obstruct, delay and affected commerce, and the movement of articles and commodities in commerce, by extortion, in that GOLDSTEIN obtained property, to wit: United States currency and other forms of payment, from BLAINE ILER, MICHAEL TURLEY, BRIAN TWOMEY and others with their consent, which consent was induced under color of official right, to wit: GOLDSTEIN's position as a senior executive of the NYC DOE.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

## COUNT THREE
### (Conspiracy to Commit Federal Program Bribery)

31.     The allegations set forth in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

32.     In or about and between March 2015 and December 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERIC GOLDSTEIN, BLAINE ILER, MICHAEL TURLEY and BRIAN TWOMEY, together with others, did knowingly and willfully conspire: (a) GOLDSTEIN, being an agent of a government agency, to corruptly solicit and demand for the benefit of GOLDSTEIN, and accept and agree to accept; and (b) ILER, TURLEY and TWOMEY to corruptly give and offer one or more things of value, to wit: United States currency and other forms of payment, to one or more persons with intent to influence and reward an agent of a government agency, to wit:

GOLDSTEIN in his official capacity as an agent of the NYC DOE, in connection with business and one or more transactions and series of transactions of such government agency involving a thing of value of $5,000 or more, while such government agency was in receipt of, in any one year period, benefits in excess of $10,000 under one or more Federal programs involving grants, subsidies, loans, guarantees, insurance and other forms of Federal assistance, contrary to Title 18, United States Code, Sections 666(a)(1)(B) and (a)(2).

33. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York, the defendants ERIC GOLDSTEIN, BLAINE ILER, MICHAEL TURLEY and BRIAN TWOMEY, together with others, did commit and cause the commission of, among others, the following:

### OVERT ACTS

(a) On or November 29, 2016, TWOMEY sent an email to GOLDSTEIN in which TWOMEY, among other things, informed GOLDSTEIN that ILER, TURLEY and TWOMEY had agreed to transfer ILER, TURLEY and TWOMEY's ownership interests in RMSCO to GOLDSTEIN and others.

(b) On or about November 30, 2016, GOLDSTEIN approved the reintroduction in New York City public schools of certain food products promoted and sold by a company owned and operated by ILER, TURLEY and TWOMEY.

(c) On or about December 8, 2016, ILER, TURLEY and TWOMEY caused a wire transfer in the amount of $66,670.39 from a bank account controlled by ILER, TURLEY and TWOMEY to a RMSCO bank account controlled by GOLDSTEIN.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT FOUR
### (Federal Program Bribery)

34. The allegations set forth in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

35. On or about December 8, 2016, within the Eastern District of New York and elsewhere, the defendants BLAINE ILER, MICHAEL TURLEY and BRIAN TWOMEY, together with others, did knowingly, intentionally and corruptly give, offer and agree to give one or more things of value, to wit: United States currency and other forms of payment, to one or more persons with intent to influence and reward an agent of a government agency, to wit: ERIC GOLDSTEIN in his official capacity as an agent of the NYC DOE, in connection with business and one or more transactions and series of transactions of such government agency involving a thing of value of $5,000 or more, while such government agency was in receipt of, in any one year period, benefits in excess of $10,000 under one or more Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of Federal assistance.

(Title 18, United States Code, Sections 666(a)(2), 2 and 3551 et seq.)

## COUNT FIVE
### (Federal Program Bribery)

36. The allegations set forth in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

37. On or about December 8, 2016, within the Eastern District of New York and elsewhere, the defendant ERIC GOLDSTEIN, being an agent of a government agency, to wit: the NYC DOE, did knowingly, intentionally and corruptly solicit and demand for the benefit of GOLDSTEIN, and accept and agree to accept, one or more things of value, to wit: United States currency and other forms of payment, from one or more persons, to wit: BLAINE ILER,

MICHAEL TURLEY and BRIAN TWOMEY and others, intending to be influenced and rewarded in connection with business and one or more transactions and series of transactions of such government agency involving things of value of $5,000 or more, while such government agency was in receipt of, in any one year period, benefits in excess of $10,000 under one or more Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of Federal assistance.

(Title 18, United States Code, Sections 666(a)(2) and 3551 et seq.)

## COUNT SIX
(Conspiracy to Commit Honest Services Wire Fraud)

38. The allegations set forth in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

39. In or about and between March 2015 and December 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERIC GOLDSTEIN, BLAINE ILER, MICHAEL TURLEY and BRIAN TWOMEY, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the NYC DOE of its intangible right to the honest services of GOLDSTEIN through bribery and kickbacks, to wit: one or more payments to GOLDSTEIN, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, picture and sounds, contrary to Title 18, United States Code, Sections 1343 and 1346.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT SEVEN
(Honest Services Wire Fraud)

40.  The allegations set forth in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

41.  In or about and between March 2015 and December 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERIC GOLDSTEIN, BLAINE ILER, MICHAEL TURLEY and BRIAN TWOMEY, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the NYC DOE of its intangible right to the honest services of GOLDSTEIN through bribery and kickbacks, to wit: one or more payments to GOLDSTEIN, and for the purpose of executing such scheme and artifice, the defendants, together with others, transmitted and caused to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, picture and sounds, to wit: an interstate email, dated on or about November 29, 2016, in which TWOMEY informed GOLDSTEIN that ILER, TURLEY and TWOMEY, among other things, agreed to transfer an ownership interest of a company to GOLDSTEIN and others.

(Title 18, United States Code, Sections 1343, 1346, 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE THROUGH SEVEN

42.  The United States hereby gives notice to the defendants charged in Counts One through Seven that, upon their conviction of such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which requires any person convicted of such offenses to forfeit any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of such offenses.

43. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON

_____
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2018R01916

FORM DBD-34
JUN. 85

No.   21-550 (SJ) (MMH)

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

ERIC GOLDSTEIN,
BLAINE ILER,
MICHAEL TURLEY and
BRIAN TWOMEY,

Defendants.

# SUPERSEDING INDICTMENT

T. 18. U.S.C., §§ 371, 666(a)(1)(B), 666(a)(2), 981(a)(1)(C), 1343, 1346, 1349, 1951(a) and 3551 et seq.: T. 21, U.S.C., § 853(p); T. 28. U.S.C., § 2461(c))

*A true bill.*

_____

*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* \_\_\_\_\_

_____

*Clerk*

Bail, $ _ _ _ _ _ _ _ _ _

Robert Polemeni, Assistant U.S. Attorney (718) 254-6044
Laura Zuckerwise, Assistant U.S. Attorney (718) 254-6204