UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

       - against -                    :        **MEMORANDUM DECISION
                                                                        AND ORDER**

ERIC GOLDSTEIN,                             :
BLAINE ILER,                                         21 Cr. 550 (DC)
MICHAEL TURLEY, and                         :
BRIAN TWOMEY,
                Defendants.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:            See last page.

CHIN, Circuit Judge:

On May 22, 2023, I heard argument on the parties' *in limine* motions as well as motions to quash Defendants' Rule 17 subpoenas.  I ruled on some of the motions and deferred ruling on others.  Additional motions have been filed subsequent to the final pretrial conference.  The Court resolves certain of these motions as follows:

**I.**     **Motions to Quash**

Before the Court is the Government's motion to quash Defendants' subpoenas issued pursuant to Federal Rule of Criminal Procedure 17 on April 28, 2023, to Debra Ascher and Dennis Barrett, and on May 3, 2023, to the New York City Department of Investigation ("DOI") and the Special Commissioner of Investigation for the New York City School District ("SCI").  *See* ECF No. 120 at 1.  After the Government

filed its motion to quash, SCI and DOI separately submitted letter motions to quash, arguing that compliance with their respective subpoenas would be "unreasonable or oppressive," SCI Mot. at 1, or "unduly burdensome," DOI Mot. at 1.  In response to these motions to quash, Defendants reissued the four subpoenas on May 16, 2023, fixing a clerical error and narrowing the documents requested.  *See* ECF No. 112 at Exs. 11-14.

Also before the Court is the SCI's motion to quash two trial subpoenas *ad testificandum* issued by Defendants, seeking the trial testimony of SCI investigators Joseph Piwowarski and Jessica Villanueva.  *See* ECF No. 119 at Ex. 1.  SCI maintains that compliance with these subpoenas would be "unreasonable or oppressive."  *Id.*

For the reasons set forth below, the motions to quash are GRANTED in part and DENIED in part.

A.    <u>Defendants' Rule 17(c) Subpoenas</u>

The revised subpoena *ad testificandum* served on Mr. Barrett, a prospective government witness, required him to appear at trial to testify.  ECF No. 112 at Ex. 12.

The revised subpoena *duces tecum* served on Ms. Ascher, also a prospective government witness, required her to appear at trial to provide testimony and to provide the following six categories of documents:

1.    "Documents sufficient to show each instance between January 1, 2010 and December 31, 2016 when the New York City Department of Education

2

[("DOE")] imposed liquidated damages on an approved-brands food manufacturer or supplier . . .";

2.    Ms. Ascher's "performance evaluations and reviews from the" DOE;

3.    "Nonprivileged documents and communications relating to the lawsuits and complaints (including anonymous complaints)" that Ms. Ascher has filed against the DOE, ███████████████████;

4.    "The documents and communications . . . sent to the Federal Bureau of Investigation, the U.S Attorney's Office for the Eastern District of New York, the U.S Attorney's Office for the Southern District of New York, or any other law enforcement agency relating to Eric Goldstein, the [DOE], SOMMA . . . , or any other vendor that has supplied food to the [DOE]";

5.    "The documents and communications" sent to SCI, DOI, or "the Office of the New York City Public Advocate relating to Eric Goldstein, the [DOE], SOMMA . . . , or any other [DOE food] vendor"; and

6.    "[C]ommunications (including . . . emails, voicemails, text messages, and other messages . . .) with Reneto Serra, Pasquale 'Pat' Russo, or Meserete Davis between January 1, 2015 and the present concerning Somma . . . , Eric Goldstein, or [DOE] food vendors." *Id.* at Ex. 11.

Next, the revised subpoenas *duces tecum* served on SCI and DOI both requested the following three categories of documents:

3

1. "The notes, summaries, memoranda, reports, audio recordings, and video recordings relating to your interviews and conversations with Meserete Davis, Shellie Porter, Dennis Barrett, Stephen O'Brien, or Debra Ascher concerning Eric Goldstein, Somma Food Group, other [DOE] food vendors, or alleged favoritism or preferential treatment toward certain [DOE] food vendors (or the lack thereof)";

2. "The notes, summaries, memoranda, reports, audio recordings, and video recordings relating to your interviews and conversations concerning potential misconduct by Eric Goldstein, Dennis Barrett, Armando Taddei, or Stephen O'Brien"; and

3. "The documents . . . received from Meserete Davis, Shellie Porter, Dennis Barrett, Stephen O'Brien, Debra Ascher, Reneto Serra, or Pasquale 'Pat' Russo in connection with" DOI's and SCI's investigations. *Id.* at Ex. 13-14.

The subpoena *duces tecum* served by Defendants on SCI included a fourth request for "documents, communications, audio recordings, and video recordings that were produced or given to [SCI] in connection with Case # 2017-2379." *Id.* at Ex. 14. Defendants explain that "Case #2017-2379" pertains to SCI's investigation "into alleged favoritism toward Somma." *Id.* at 9.

Finally, the subpoenas *ad testificandum* served on Mr. Piwowarski and Ms. Villanueva request that they appear at trial to testify. *See* ECF No. 119 at Ex. 1.

4

Mr. Piwowarski was the "assigned investigator" on "Case # 2017-2379," whereas Ms. Villanueva was not the assigned investigator on any "cases concerning SchoolFood." *Id.*

 B.  Propriety of the Subpoenas

 Federal Rule of Criminal Procedure 17(c) states that "a court may quash or modify the subpoena if compliance would be unreasonable or oppressive."  The Supreme Court has twice addressed Rule 17(c), but neither case involved the issue presented here -- a defense subpoena of documents or information from a third party. Indeed, in *Bowman Dairy Company v. United States*, 341 U.S. 214, 220 (1951), the Supreme Court held that a criminal defendant may issue a Rule 17(c) subpoena *to the government*, so long as it does not exceed the scope of Rule 16.  Then, in *United States v. Nixon*, 418 U.S. 683, 700 (1974), the Supreme Court applied *Bowman Dairy* to a Rule 17(c) subpoena issued by the government to the President of the United States, and required the government to "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity," noting that the subpoena may not be used for a "general 'fishing expedition.'"

 Nevertheless, although *Nixon* did not determine the propriety of a Rule 17(c) subpoena issued by a defendant to a third party, most lower courts have embraced the standard announced in *Nixon* as applicable to this circumstance.  *See United States v. Tucker*, 249 F.R.D. 58, 65 n. 43 (S.D.N.Y. 2008), *as amended* (Feb. 20, 2008) (collecting cases).  The *Nixon* standard, however, "is inappropriate where production is requested by (A) a criminal defendant; (B) on the eve of trial; (C) from a non-party; (D) where the

defendant has an articulable suspicion that the documents may be material to his defense." *Id.* at 66; *see also United States v. Rajaratnam*, 753 F. Supp. 2d 317, 322 n. 1 (S.D.N.Y. 2011) ("[I]n the context of a subpoena to a third party to whom Rule 16 does not apply, requiring the defendant to specify precisely the documents he wants without knowing what they are borders on rendering Rule 17 a nullity.").  In such circumstances, a standard less stringent than *Nixon* is appropriate, requiring a defendant to "only show that the request is (1) reasonable, construed as 'material to the defense,' and (2) not unduly oppressive for the producing party to respond." *Tucker*, 249 F.R.D. at 66.

Although the *Tucker* standard ensures "that the defendant has a right to obtain evidentiary material from a third party that is no broader -- but also no narrower -- than the defendant's right to obtain such material from the government," *Rajaratnam*, 753 F. Supp. 2d at 322 n.1, this standard does not change the "fundamental characteristic[]" of Rule 17(c) subpoenas in criminal cases, *Nixon*, 418 U.S. at 698 (noting that the subpoena *duces tecum* "was not intended to provide a means of discovery for criminal cases").  Indeed, even under *Tucker*, Rule 17(c) subpoenas are not to be used as broad discovery devices." 249 F.R.D. at 66.  Thus, the "fishing expedition" prohibited under *Nixon* is still inappropriate under *Tucker* -- the Rule 17(c) subpoena "must be reasonably targeted to ensure the production of material evidence." *Id.*

Applying these principles, I address each of the subpoenas in turn.

6

1.   <u>Subpoena to Dennis Barrett</u>

The Government's sole objection to the initial subpoena issued to

Mr. Barrett was that it was "facially invalid" because the current Clerk of Court had not

signed it.  ECF No. 120 at 5; *see also* Fed. R. Crim. P. 17(a) ("The clerk must issue a blank

subpoena -- signed and sealed -- to the party requesting it . . . .").  Defendants, however,

issued a revised subpoena on May 16, 2023, fixing this deficiency.  *See* ECF No. 112 at

Ex. 12.  Accordingly, because the Government has not raised any new objection, its

motion to quash is DENIED as to Mr. Barrett's subpoena.

2.   <u>Subpoena to Debra Ascher</u>

The Government argues that Ms. Ascher's subpoena should be quashed

because "it is an overbroad, burdensome fishing expedition, designed to harass a

prospective government witness."  ECF No. 120 at 5.  Defendants maintain that their

document requests seek relevant, admissible evidence of Ms. Ascher's bias against Mr.

Goldstein and other SchoolFood executives who made and implemented the decisions

that the Government now alleges resulted from bribery.  *See* ECF No. 112 at 13.

████████████████████████████████████████████████, "[t]here is

no doubt that [Defendants] intend[]to use information gleaned from these [requested

materials] solely to impeach" Ms. Ascher, which is "clearly material to [Defendants']

defense."  *Tucker*, 249 F.R.D. at 66.  Nonetheless, I have concerns about the breadth of

the documents requested, the limited amount of time for compliance with the subpoena

given that trial is less than one week away, and, quite plainly, the ability of a third-party

fact witness -- an individual public servant -- to comply with all the requests.  For example, the first category of documents seeks documents ranging over a seven-year period, relating to any "approved-brands food manufacturer or supplier."  ECF No. 112 at Ex. 11.  It is unclear whether Ms. Ascher even has access to this information, or how she could go about collecting it.  Moreover, the third, fourth, fifth, and sixth categories of documents requested seek all documents and communications that Ms. Ascher or her lawyer sent to, or had with, upwards of six different law enforcement entities or government agencies, and Ms. Ascher's communications, "without limitation" as to form, with three separate individuals.  *Id.*  These five document requests read as a "fishing expedition," and Defendants have not persuaded me that it would not be "unduly oppressive" for Ms. Ascher to respond.

As to the second category of documents requested, although this evidence is to be used for impeachment, I am not persuaded that Ms. Ascher's "performance evaluations and reviews from the" DOE would be probative of her purported bias against Mr. Goldstein and Somma.  *Id.*  Moreover, although this category of documents is defined more narrowly than the other requested categories of documents, such a production will still be unduly burdensome given Ms. Ascher's long career at the DOE.

Accordingly, the Government's motion to quash is GRANTED as to Ms. Ascher's subpoena.

### 3.   Subpoena to SCI and DOI

The Government argues that the subpoenas issued to SCI and DOI are similarly "fishing expeditions," seeking an "extraordinary breadth" of documents. ECF No. 120 at 5-6. The Government does not address the materiality of Defendants' document requests, but the material sought -- prior inconsistent statements of the Government's witnesses -- may indeed be material to the defense. *See Tucker*, 249 F.R.D. at 66. Moreover, given that SCI and DOI conducted investigations into the conduct at issue in this case, including Mr. Goldstein's relationship with Somma and the DOE's handling of complaints regarding foreign objects, there is a reasonable probability that the impeachment evidence Defendants seek to obtain will be material.

Materiality is not the only consideration at play, however. As written, the categories of documents sought in the SCI and DOI subpoenas -- albeit more specific than the requests in the original subpoenas -- are still quite broad, seeking, for example, interview materials from issues related to other DOE food vendors, documents received from seven different custodians, and, in the case of SCI's subpoena, an entire case file. *See* ECF No. 112 at Exs. 13, 14. Although SCI and DOI are government agencies, and not third-party individuals like Ms. Ascher, the burdens of complying with such broad document requests in the subpoena are still great, considering too that documents responsive to the subpoenas will need to be reviewed and potentially redacted to remove confidential or privileged information, again, with trial to commence in just a

few days.  *See* SCI Mot. at 4; DOI Mot. at 3.  Accordingly, Defendants have not shown

that production responsive to the subpoenas, as currently written, would not be

unreasonably onerous.

Nonetheless, I acknowledge that the kinds of impeachment materials

Defendants seek from the SCI and DOI are integral to the defense, and that the right to

confront one's accusers is "meaningless if a defendant is denied the reasonable

opportunity to obtain material evidence that could be crucial to that cross-examination."

*Tucker*, 249 F.R.D. at 67.  I also acknowledge that Rule 17(c) allows me to modify an

unreasonable or oppressive subpoena, in lieu of quashing the subpoena outright, *see*

Fed. R. Crim. P. 17(c), and that while compliance with these subpoenas may be unduly

burdensome, compliance with a modified, narrower subpoena would not be.  Thus, SCI

and DOI are directed to produce to Defendants notes, summaries, memoranda, reports,

audio recordings, and video recordings of the interviews and conservations with

Meserete Davis, Shellie Porter, Dennis Barrett, Stephen O'Brien, and Debra Ascher

concerning allegations of misconduct by Eric Goldstein or Somma Food Group.

Accordingly, the motions to quash the SCI and DOI subpoenas are

DENIED, and the Court hereby modifies the subpoena in accordance with this Decision.

4.      Subpoenas to Joseph Piwowarski and Jessica Villanueva

As to the two subpoenas *ad testificandum* issued to SCI investigators Mr.

Piwowarski and Ms. Villanueva, SCI argues that the prospective witnesses' testimony is

unnecessary, irrelevant, and barred by Federal Rule of Evidence 403, as well as that

complying with the subpoenas would be unduly oppressive.  *See* ECF No. 119 at Ex. 1.

Although Rule 17(c) applies by its terms only to subpoenas *duces tecum*,

"courts have repeatedly, when the interest of justice have so warranted, heard and

granted (and denied) motions to quash subpoenas to compel testimony."  *United States*

*v. Klubock*, 639 F. Supp. 117, 123 (D. Mass. 1986), *aff'd*, 832 F.2d 664, 667 (1st Cir. 1987)

(en banc).  Here, the interest of justice does not warrant quashing the subpoenas.

First, at the final pretrial conference, the Court ruled that while the

conclusions of SCI's investigations are inadmissible, evidence from and about the

investigations may be admissible for purposes such as impeaching witnesses with prior

inconsistent statements.  Indeed, Defendants assert that the possibility of impeaching

Government witnesses is why they have issued the subpoenas: to call the SCI

investigators, if necessary, "to testify to the statements [of Government witnesses] they

recorded in their interview memoranda."  ECF No. 119 at 2.  Second, the Court finds, in

its discretion, that the probative value of such evidence is not substantially outweighed

by unfair prejudice or any other concern enumerated in Rule 403.  Third, the Court

finds that compliance with the subpoenas would be neither unreasonable nor

oppressive.  Finally, while the Court retains discretion to exclude evidence that is

"needlessly . . . cumulative," Fed. R. Evid. 403, it is not unreasonable for Defendants to

elicit impeachment testimony from both investigators who interviewed a particular

11

witness, *see* ECF No. 119 at Ex. 1 n.5 (describing SCI's practice of sending two investigators to conduct witness interviews for the purpose of resolving "subsequent conflicts concerning what was said").

Thus, SCI's motion to quash the subpoenas *ad testificandum* is DENIED.

### 5.    The Government's Rule 17(h) Argument

The Government argues -- and SCI and DOI reiterate in their motions -- that Defendants' subpoenas run afoul of Rule 17(h), which explicitly "precludes the use of subpoenas to seek prior statements by prospective witnesses."  ECF No. 120 at 4. Defendants disagree, arguing that Rule 17(h) operates to prevent discovery only of statements in the possession of the Government, and that because the Government has disclaimed possession, custody, or control over the subpoenaed materials, Rule 17(h) does not apply.  *See* ECF No. 112 at 14-15.  I conclude that Defendants have "the better view."  *United States v. Hussain*, No. 16-CR-0462, 2018 WL 1091083, at *2 (N.D. Cal. Feb. 28, 2018) ("Rule 17(h) only applies to statements in the possession of the government.").

Rule 17(h) provides that "[n]o party may subpoena a statement of a witness or of a prospective witness under this rule," as "Rule 26.2 governs the production of [that] statement."  Fed. R. Crim. P. 17(h).  By its plain language, Rule 17(h) seems to broadly preclude subpoenas for all statements from prospective witnesses. Nonetheless, several district courts have concluded that Rule 17(h) only applies to witness statements *in the possession of a party*.  *See United States v. Chavez*, No. 15-CR-

0285, 2020 WL 109703, at *3 (N.D. Cal. Jan. 9, 2020) (noting that "[n]o appellate court appears to have considered whether Rule 17(h)'s prohibition against subpoenaing witness statements applies to statements that are not . . . . in the United States' possession" and concluding that Rule 17(h) "should not be interpreted to prevent a party from subpoenaing witness statements in the possession of a non-party"); *Hussain*, 2018 WL 1091083, at *2; *United States v. Young*, No. 03-20400, 2004 WL 784840, at *2 (W.D. Tenn. Mar. 4, 2004). And although some district courts have concluded that Rule 17(h) applies to all statements of prospective witnesses, no matter the source, these conclusions were reached summarily, without addressing the history or purpose of the rule. *See United States v. Yudong Zhu*, No. 13-CR-0761, 2014 WL 5366107, at *3 & n. 3 (S.D.N.Y. Oct. 14, 2014); *United States v. Vasquez*, 258 F.R.D. 68, 73 (E.D.N.Y. 2009). If this interpretation is correct, defendants in criminal cases would have no ability to obtain prior statements from witnesses that are not in the possession of the Government, as Rule 26.2 discovery is available only from parties, and not non-party witnesses.

In fact, as Defendants note in their Opposition, *see* ECF No. 112 at 14, an earlier version of Rule 17(h) explicitly supported Defendants' position, providing that "[s]tatements made by witnesses or prospective witnesses may not be subpoenaed *from the government or the defendant* under this rule," *Order of the Supreme Court*, 207 F.R.D. 89, 442 (2002) (emphasis added). When Rule 17 was "amended as part of the general restyling of the Criminal Rules" to its current form, the italicized language was removed

13

from 17(h), but the advisory committee's note indicates that this change was "intended to be stylistic only." *Id.* at 443; *see also Hussain*, 2018 WL 1091083, at *2 ("The advisory committee's notes reflect an intention to make the rules coherent, not to change them. That is, they do not reflect an intention to make third-party witness statements undiscoverable . . . ."). Accordingly, the Government's Rule 17(h) argument fails.

II.   **Government's Motion to Admit Statements Made by Defendants' Agents**

The Government has moved to admit "statements made over the course of the charged criminal conspiracies by agents of the defendants," including Defendant Goldstein's subordinates at the New York City Department of Education (the "DOE"); employees of Defendants Iler, Turley, and Twomey at the food service company they own, Somma; and Somma's former attorney. ECF No. 98 at 31-35. The Government's motion is GRANTED IN PART, subject to a limiting instruction. The Court reserves judgment as to the remaining aspects of the Government's motion.

Rule 801(d)(2)(D) of the Federal Rules of Evidence carves out an exception to the hearsay rule for statements that are "offered against an opposing party and . . . made by the party's agent or employee on a matter within the scope of that relationship and while it existed." It is the burden of the party offering such statements to lay a foundation consisting of evidence that (1) the declarant was an "agent or employee" of the opposing party within the meaning of the Rule, (2) the declarant spoke within the scope of that agency or employment relationship, and (3) the declarant spoke while the

14

agency or employment relationship existed.  *See Zaken v. Boerer*, 964 F.2d 1319, 1322-23 (2d Cir. 1992).

Where a party-opponent occupies a higher rank within the same organization as a hearsay declarant, the Second Circuit has applied a functional test to determine whether the declarant was an "agent or employee" under Rule 801(d)(2)(D). In *Zaken*, a pregnancy discrimination case, the plaintiff sought to introduce against her former employer's owner and CEO an out-of-court statement made by the employer's vice president of sales.  The Circuit held that such evidence's admissibility "depends on the relationship between the declarant and the defendant."  *Id.* at 1323.  It concluded the vice president, "though an officer of the company, was nonetheless answerable to [the CEO,] who . . . directed [the company's] operations and ultimately made all the final decisions.  In essence, [the vice president] was directly responsible to [the CEO]."  *Id.*

Cases citing *Zaken* have expanded on its holding.  In *United States v. Rioux*, 97 F.3d 648, 660-61 (2d Cir. 1996), the defendant, an elected Connecticut High Sheriff, was charged with extorting would-be deputies.  The district court admitted "testimony of Deputies and Special Deputies concerning statements made by their supervisors regarding the payment of Association dues" (*i.e.*, Rioux's method of extortion).  Affirming, the Circuit wrote:  "Here the government proved that the supervisors: (1) were hand-picked by Rioux; (2) served at his pleasure; and (3) received their instructions through Rioux himself or the Chief Supervisory Special Deputy Sheriff, a

15

position Rioux created.  Under *Zaken*, the fact that these supervisors were answerable and directly responsible to Rioux . . . is enough."  *Id.* at 660.[1]

More recent cases confirm that *Zaken*'s "directly responsible to" test may be satisfied by a direct reporting relationship but may also be satisfied by facts demonstrating the declarant depended on the defendant for her position and job instructions.  In short, a direct reporting relationship is sufficient, but not necessary. *See, e.g.*, *Cameron v. NYC Dep't of Educ.*, No. 15 Civ. 990, 2018 WL 1027710, *4-6 (S.D.N.Y. Feb. 21, 2018) (statement of assistant principal admissible against principal, and statement of teacher admissible against principal because principal evaluated and supervised teacher); *In re Res. Fund Sec. & Deriv. Litig.*, No. 09 Civ. 4346, 2012 WL 12354233, *7-8 (S.D.N.Y. Oct. 3, 2012) (statement of senior corporate staff admissible against persons controlling corporate entity where defendant "is the declarant's ultimate supervisor," either "directly or indirectly"); *Pierce v. Rodriguez*, No. 20 Civ. 1755, 2023 WL 2646825, at *5-6 & n.3 (D. Conn. Mar. 27, 2023) (statements of corrections officers against senior prison officials admitted at summary judgment, subject to further foundation to be laid at trial).  Other Circuits have held that it is not enough for the declarant merely to occupy a position lower down in a chain of command reporting to

---

[1]       In *Rioux*, the Circuit also held that a declarant need not be the "final decisionmaker" on a matter, such as the deputies' employment, "for his statement on those matters to be deemed within the scope of his agency.  Rather, he need only be an advisor or other significant participant in the decision-making process that is the subject matter of the statement."  97 F.3d at 661.

the defendant.  *See, e.g., Boren v. Sable*, 887 F.2d 1032, 1040 (10th Cir. 1989); *United States v. Young*, 736 F.2d 565, 567 (10th Cir. 1983) (cited in *Zaken*).

Here, the Government seeks to introduce statements made by three categories of persons it claims are agents:  (1) one of Goldstein's immediate subordinates; (2) other employees of DOE and Somma; and (3) Somma's former attorney.  ECF No. 98 at 34-35.

Because Goldstein's subordinate Dennis Barrett "reported directly" to Goldstein, ECF No. 98 at 34, he is an agent within the meaning of the exception and his out-of-court statements are admissible to the extent they were made about matters "within the scope of that relationship and while it existed," Fed. R. Evid. 801(d)(2)(D).

The Court has insufficient information to determine whether the other individuals the Government regards as agents within the scope of Rule 801(d)(2)(D) were sufficiently responsible to the Defendants.  Therefore, the Court reserves judgment about the admissibility of such statements until trial.

As to Barrett's statements and any others admitted at trial, a limiting instruction under Fed. R. Evid. 105 may be necessary.  Barrett's statements are admissible only against Goldstein, not the Somma defendants; any other statements admitted at trial are admissible only against an agent's principal(s).  If the parties want a limiting instruction to this effect, they may propose one.

**III.**     <u>**Government's Motion to Exclude Expert Testimony of Clayton Gillette**</u>

The Government has moved to exclude the testimony of Defendants' proposed expert Clayton Gillette.  ECF No. 99 at 15-18.  Defendants have offered Gillette, the Max E. Greenberg Professor of Contract Law at New York University School of Law, to testify that under New York law, a contract between the DOE and its distributors (the "DOE Contract") "provided no basis for the DOE to impose liquidated damages on a manufacturer as [the] DOE threatened to do to Somma," a food service company owned in part by Defendants Iler, Turley, and Twomey.  ECF No. 114 at 11. For the reasons set forth below, the Government's motion is GRANTED.

The Superseding Indictment alleges that (1) a DOE executive "notified the defendants ILER, TURLEY and TWOMEY that [Somma] would be fined" and (2) "TURLEY asked GOLDSTEIN to intervene to revoke the fine" and, in furtherance of that request, "TURLEY directed ILER and TWOMEY to send GOLDSTEIN a PowerPoint presentation . . . to influence GOLDSTEIN to assist [Somma]."  Superseding Indictment, ECF No. 45, at ¶ 18.  The Superseding Indictment further alleges that the DOE subsequently "decided to waive imposition of the fine" and Goldstein "made the decision."  *Id.*  In short, the Superseding Indictment alleges that DOE executives, including Goldstein, took actions consistent with the belief that they had the capacity to impose (or waive) liquidated damages under the DOE Contract, and Iler, Turley, and Twomey responded as if the executives' belief about their capacity were correct.

18

In light of these allegations, the Court finds in its discretion that Gillette's testimony is irrelevant.  If DOE executives and Defendants acted on the premise that the DOE Contract authorized the DOE to impose liquidated damages, the charges against Defendants do not depend on whether that premise was true.  Even if Defendants (and Gillette) are correct that the DOE lacked legal authority to impose liquidated damages, that does not mean DOE officials, believing otherwise, did not attempt to do so.  And even if, as Defendants allege, Turley raised legal objections to the imposition of liquidated damages at the time the DOE threatened to impose damages, *see* ECF No. 114 at 12, that does not exclude the possibility that Defendants, who took DOE officials' threats seriously, bribed Goldstein to ensure that the decision would go in their favor.

The Government cites cases in which Courts of Appeals have rejected arguments that the word "corruptly" in the bribery statute "requires evidence of an intent to procure a *violation* of the public official's duty."  *United States v. Alfisi*, 308 F.3d 144, 150 (2d Cir. 2002) (emphasis added); *see also* ECF No. 99 at 16-17 (collecting cases).  Defendants do not contest the Government's legal analysis but argue these cases are inapposite because Defendants intend, *inter alia*, "to show that they had no need to bribe Mr. Goldstein because [DOE] was legally barred from imposing the liquidated damages."  ECF No. 114 at 9.  Yet Defendants miss the point:  No one has a need to bribe a government official, and the Government's cases amply demonstrate that a person is guilty of bribery even if the purpose of the bribe is to obtain a legally proper

decision or outcome.  *See, e.g.*, *Alfisi*, 308 F.3d at 150-51; *United States v. Shields*, 999 F.2d 1090, 1096 (7th Cir. 1993).

Finally, the Government argues that Gillette's opinion should independently be precluded because "it is well settled that an expert witness is not permitted to opine as to the legal obligations of the parties under a contract."  ECF No. 99 at 18.  Defendants, in response, cite cases to the effect that "there is no blanket prohibition on testimony concerning the law," ECF No. 114 at 13 (quoting *Adams v. New England Scaffolding, Inc.*, 2015 WL 9412518, at *5-7 (D. Mass. Dec. 22, 2015)).  Defendants also note that Gillette's opinion is on a question that is "not a basis for liability in this case," ECF No. 114 at 13 (quoting *In re Term Commodities Cotton Futures Litig.*, No. 12 Civ. 5126, 2020 WL 5849142, at *14 (S.D.N.Y. Sept. 30, 2020)).  Therefore, Defendants contend, there is no risk Gillette's testimony would usurp the jury's role.

Defendants, however, give short shrift to the far more numerous cases holding that testimony consisting of legal conclusions is generally inadmissible.  *See, e.g.*, *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("As a general rule an expert's testimony on issues of law is inadmissible."); *United States v. Scop*, 846 F.2d 135, 139-40, *modified on other grounds*, 856 F.2d 5 (2d Cir. 1998); *Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 509 (2d Cir. 1977).  Moreover, although Defendants are correct that there are exceptions to the rule that testimony offering legal conclusions is inadmissible, courts that have allowed expert testimony on legal issues have specifically

noted that because "such testimony has to accurately state the law," an expert "cannot

simply opine as to his or her view of a disputed point of law." *Adams*, 2015 WL 9412518,

at *6. Here, there is evidence that DOE officials believed -- not unreasonably -- that

liquidated damages could be imposed under the DOE Contract. The interpretation of

the contract was therefore disputed, and expert testimony as to its proper interpretation

is inadmissible. *See Marx*, 550 F.2d at 508 ("[T]he district court erred in permitting . . . an

expert witness . . . to give his opinion as to the legal obligations of the parties under [a]

contract.").

      For these reasons, the Government's motion to preclude Gillette's

testimony is GRANTED.

      SO ORDERED.

Dated:    New York, New York
        May 24, 2023

                          DENNY CHIN
                          United States Circuit Judge
                          Sitting by Designation

APPEARANCES:  BREON PEACE, Esq.
        United States Attorney for the Eastern District of New York
        *By*:  Robert T. Polemini, Esq.
           Andrew D. Grubin, Esq.
           Laura Zuckerwise, Esq.
           Kaitlin McTague, Esq.
           Assistant United States Attorneys
           271 Cadman Plaza East
           Brooklyn, NY  11201

        FEDERAL DEFENDERS OF NEW YORK
        *By*:  Kannan Sundaram, Esq.
           One Pierrepont Plaza, 16th Floor
           Brooklyn, NY  11201

           Neil P. Kelly, Esq.
           52 Duane Street, 10th Floor
           New York, NY  10007
           Attorneys for Defendant Eric Goldstein

        AKERMAN LLP
        *By*:  Bradley L. Henry, Esq.
           1251 Avenue of the Americas, 37th Floor
           New York, NY  10020

           Michael P. Kelly, Esq.
           Kathleen Hunter Shannon, Esq.
           750 Ninth Street, NW, Suite 750
           Washington, DC  20001

           Elpitha Lambros, Esq.
           71 South Wacker Drive
           Chicago, IL  60606
           Attorneys for Defendant Blaine Iler

ZUCKERMAN SPAEDER LLP

*By*:     Aitan D. Goelman, Esq.
          Daniel A. Braun, Esq.
          1800 M Street, NW, Suite 1000
          Washington, DC  20036

          Leila Bijan, Esq.
          485 Madison Avenue, 10th Floor
          New York, NY  10022
          Attorneys for Defendant Michael Turley

WILLIAMS & CONNOLLY LLP

*By*:     Brendan V. Sullivan, Esq.
          Tobin J. Romero, Esq.
          Amy Mason Saharia, Esq.
          Zachary K. Warren, Esq.
          Patrick J. Looby, Esq.
          680 Maine Avenue, SW
          Washington, DC  20024
          Attorneys for Defendant Brian Twomey

JOCELYN E. STRAUBER
Commissioner, New York City Department of Investigation

*By*:     Andrew Brunsden, Esq.
          General Counsel
          180 Maiden Lane
          New York, NY  10038

ANASTASIA COLEMAN, Esq.
Special Commissioner of Investigation for the New York
City School District

*By*:     Gerald P. Conroy, Esq.
          Deputy Commissioner
          80 Maiden Lane, 20th Floor
          New York, NY  10038